IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**DEANNA L. SOTO,**

        Plaintiff,

vs.                                                                                  No. CIV 01-0077 MV/LCS

**LARRY G. MASSANARI,**[1]
**Acting Commissioner,**
**Social Security Administration,**

        Defendant.

**MAGISTRATE JUDGE'S PROPOSED FINDINGS**
**AND RECOMMENDED DISPOSITION**

THIS MATTER came before the Court upon Plaintiff's Motion to Reverse or Remand the Administrative Decision filed July 26, 2001 (*Doc. 9*). The Commissioner of Social Security issued a final decision denying the Plaintiff her claim for Supplemental Security Income benefits. The United States Magistrate Judge, having considered the Motion, the memoranda submitted by the parties, the administrative record and the applicable law, finds that the motion is not well taken and recommends that it be DENIED.

**PROPOSED FINDINGS**

**I. PROCEDURAL RECORD**

1.       Plaintiff Deanna Louise Soto filed an application for a period of Supplemental Security Income with the Social Security Administration on July 23, 1998 alleging a disability since April 30,

---

[1]    Effective March 29, 2001, Larry G. Massanari was appointed to serve as Acting Commissioner of Social Security. Pursuant to FED. R. CIV. P. 25 (d), Larry G. Massanari, Acting Commissioner of Social Security, is substituted for William A. Halter, Acting Commissioner of Social Security, as the defendant in this action.

1

1998 due to asthma, depression, diabetes, anxiety phobia, and stress. *See* R. at 84. Plaintiff's application was denied at the initial level on October 14, 1998, *see* R. at 54, and at the reconsideration level on January 14, 1999. *See* R. at 50. Plaintiff appealed the denial of her claim by filing a Request for Hearing by an Administrative Law Judge (ALJ) on February 8, 1999. *See* R. at 69.

    2.    The Commissioner's ALJ conducted a hearing on Ms. Soto's application on February 2, 2000. *See* R. at 14. The ALJ made the following conclusions according to the sequential analysis set forth in 20 C.F.R. § 404.1520(a)-(f) and *Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir. 1993): the claimant had not engaged in substantial gainful activity since April, 1998; the severity of the claimant's impairments did not meet or equal a listed impairment; the claimant had "severe" impairments consisting of asthma, non-insulin dependant diabetes, adjustment disorder, and anxiety disorder; the claimant's subjective complaints and functional limitations, including pain was not supported by the evidence as a whole in the disabling degree alleged and therefore lacked credibility; and the claimant retains the residual functional capacity to return to past relevant work. *See* R. at 14-19.

    3.    The ALJ entered his decision on May 15, 2000. *See* R. at 19. Thereafter, the Plaintiff filed a request for review in May of 2000 to the Appeals Council. *See* R. at 8. On December 11, 2000, the Appeals Council issued its decision denying her request for review and upholding the final decision of the ALJ. *See* R. at 5. The Plaintiff subsequently filed her complaint for court review of the ALJ's decision on January 19, 2001. (*Doc. 1*).

## II. STANDARD OF REVIEW

4.      The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *See Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion." *Andrade v. Secretary of Health and Human Svcs.*, 985 F.2d 1045, 1047 (10th Cir. 1993) (quoting *Broadbent v. Harris*, 698 F.2d 407, 414 (10th Cir. 1983) (citation omitted)). A decision of an ALJ is not supported by substantial evidence if other evidence on the record overwhelms the evidence supporting the decision. *See Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988).

5.      In order to qualify for disability insurance benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months, which prevents the claimant from engaging in substantial gainful activity. *See* 42 U.S.C. §423(d)(1)(A); *see also Thompson*, 987 F.2d at 1486. The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. *See* 20 C.F.R. § 404.1520 (a-f) and 416.920. The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *See Thompson*, 987 F.2d at 1487.

6.      At the first four levels of the sequential evaluation process, the claimant must show she is not engaged in substantial gainful employment, she has an impairment or combination of impairments severe enough to limit her ability to do basic work activities, and her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or she is unable to perform work she had done in the past. 20 C.F.R. §§

404.1520 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering her residual functional capacity, age, education, and prior work experience. *See id.*

### III. ADMINISTRATIVE RECORD

7. The record indicates that the Plaintiff has a history of medical problems including type II diabetes, obesity, stable asthma, and headaches. *See* R. at 125, 127, and 164. In March of 1998, Ms. Soto started complaining of some abdominal pain. *See* R. at 146. A few months later, Robert C. Galagan, M.D. concluded that Ms. Soto presented symptoms "remarkable for chest tightness associated with left neck and arm pain and shortness of breath." *See* R. at 127. Dr. Galagan also stated that Ms. Soto commented on her loss of weight and that she was continuing to loose weight despite the improvement in her blood sugar control. *Id.* Dr. Galagan prescribed an Albuterol inhaler for her wheezing. *See* R. at 128. Approximately one month later, Ms. Soto reported that her wheezing improved but that she suffered from anxiety and depressive symptoms. *See* R. 125. Dr. Galagan stated that "[s]he has been on leave of absence from work for the past three weeks. She has been having frequent crying spells, lack of motivation, some difficultly sleeping. She is having episodes of feeling jittery and shaky even when her blood sure level isn't low." *Id.* The doctor's impressions consisted of type II diabetes, chronic obesity, stable asthma, and anxiety-depression symptoms. *Id.* The doctor ultimately recommended Zoloft for her depression. *Id.*

8. In August of 1998, Daniel R. Malone, Ph.D in Psychology, made a recommendation concerning the Plaintiff's mental impairment. *See* R. at 153. Although Dr. Malone never treated Ms. Soto, he concluded that there was insufficient evidence as to the nature and severity of the claimant's mental impairments. *Id.* He made his recommendation after reviewing the Plaintiff's treating

physicians' comments. Specifically, Dr. Malone stated that "[t]here is no psychiatric history and, more importantly, there is no mental status examination or other objective evidence to determine the nature and severity of the claimant's mental impairments. Current treating physicians are only treating the few symptoms that the claimant reports with apparently no or little inquiry into her psychiatric history and current mental status. There is no formal diagnosis of mental impairment." *See* R. 153.

      9.      One month later, Ms. Soto was seen by Gerald S. Fredman, M.D. *See* R. at 163. The Plaintiff noted during her session that she had problems with anxiety, she was nervous, restless, irritable, and had difficulty concentrating. *Id*. The doctor noted that her medication was helping her condition and that she was receiving no formal mental health services at that time. *Id*. In summary, Dr. Fredman stated that the Plaintiff presented "mixed symptoms of depression and anxiety related to the onset of medical problems earlier this year. The medical problems include headaches, diabetes, and asthma, and she is under care for these problems at the present time." *See* R. at 166.

      10.     In October of 1998, a non-treating physician filled out a psychiatric review technique form. *See* R. at 169.[2] The doctor stated that there is evidence of an anxiety related disorder which improves with medication. *Id*. He also stated that her daily activities were not limited and that her mental impairment was not severe. *Id*. The following year, in February, 1999, Ms. Soto complained of episodes of anxiety occurring several times a week. *See* R. at 228. She stated that she left her job at the police department because of such symptoms. Dr. Galagan assessed that she exhibited signs of chronic depression and anxiety disorders. *Id*. Later in 1999, Jacob Tendler, M.D. in Psychiatry, stated that

---

[2]    It appears the physician's first name is Samuel, however, the physician's last name is illegible.

> [a] psychiatric evaluation [from] 9/25/98 discloses an adjustment disorder with mixed anxiety and depressed feature. It is important to note that adjustment disorder are usually reserved in psychiatry to non-severe impairment. A generalized anxiety cannot be supported at this time in view of the claimant's clinical presentation, Moreover this claimant has never required psychiatric hospitalization, she is not psychotic nor is she suicidal or cognitively deficient. . . . The medical evidence in file would seem to be adequate in documenting a non-severe mental impairment. *See* R. at 193.

11.     Two months later in November of 1999, the Plaintiff was seen by a social worker at La Familia, Support Services for Families. *See* R. at 255. The social worker assessed the Plaintiff to have major depression (severe, with mood congruent psychotic features); panic disorder; mental disorder affecting diabetes; stress related physiological response affecting asthma; and occupational and economic problems. *Id*. The social worker concluded that "Ms. Soto's current level of psychiatric and physical functioning precludes her employment at this time. She is at high risk for further decompensation and psychiatric hospitalization." *Id*.

12.     The following summary represents questions that were asked by the ALJ and the Plaintiff's attorney at Ms. Soto's hearing on February 2, 2000. The Plaintiff testified that she had difficulties with her asthma.  *See* R. at 45. Specifically, she stated that running, walking, bending up and down, stress and anxiety all contribute to her asthma problems. *See*. R. at 35. She also stated that in addition to her asthma problems she experienced headaches, chest pains, shortness of breath, back pain, and exhaustion. *See* R. at 37. The Plaintiff testified that she left her previous job as an administrative clerk because she had a very stressful boss who was "really hard" on her. *See* R. at 38. The scope of her duties as an administrative law clerk included clerical work, answering phone calls, preparing reports, and computer work. *Id*. Ms. Soto stated that her anxiety and nervousness around other people is what kept her from working. *See* R. at 39. She attended counseling from a social worker about once a week and takes various types of medication. *See* R. at 39 and 40. The Plaintiff's

major complaints of pain were of headaches, back pain, leg pain, and upper body pain. *See* R. at 44 and 46. She testified that her daily activities include cooking, laundry, some shopping. *See* R. at 48. She is also the primary caretaker of her six and ten year old children. *Id*.

### III. DISCUSSION

13.     Plaintiff raises two arguments in support of her Motion to Reverse or Remand the Administrative Agency Decision. First, the ALJ failed to properly determine the Plaintiff's residual functional capacity. And secondly, the ALJ erred in his credibility assessment.

### Plaintiff's Credibility

14.     The Plaintiff first argues that the ALJ's credibility finding is contrary to the evidence and the law.  It is well established principle that it is not this Court's task to make an independent judgment as to the credibility of the claimant's testimony regarding her subjective physical symptoms. "[T]he determination of credibility is left to the observations made by the Administrative Law Judge as the trier of fact." *Broadbent v. Harris*, 698 F.2d 407, 413 (10th Cir.1983). "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" *Huston v. Bowen*, 838 F.2d 1125, 1131, 1133 (footnote omitted)  (10th Cir. 1988), (citing *Kepler*, 68 F.3d at 391).

15.     In addition to discussing the evidence supporting the ALJ's decision regarding credibility, the ALJ must also discuss the uncontroverted evidence upon which he chooses not to rely, as well as the significantly probative evidence which he rejects. *See Casias v. Sec'y of Health & Hum. Serv.*, 933 F. 2d 799, 801 (10th Cir. 1991); *see also Miller v. Chater*, 99 F.3d 972, 976 (10th Cir.1996) (ALJ must give legitimate reasons to reject treating physician's opinion). The ALJ cannot ignore other objective evidence favoring the plaintiff simply because he has already found plaintiff not

credible. *Id.* Ignoring such evidence violates both his duty of inquiry, *Henrie v. U.S. Dept. of Health & Hum. Serv.*, 13 F.3d 359, 361 (10th Cir. 1993), and the prohibition on picking through the record for isolated bits of evidence. *Id.*

16.     The ALJ should consider such factors as "the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of non-medical testimony with objective medical evidence." *Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir. 1991) (quoting *Huston*, 838 F.2d at 1132 and n. 7).

17.     In this case, the ALJ noted that the Plaintiff's "statements concerning her impairments and their impact on her ability to work were not entirely credible in light of the claimant's own description of her activities and life style, discrepancies between the claimant's assertions and information contained in the documentary reports and findings made on examination." *See* R. at 17. After reviewing the record, there is ample evidence to support this conclusion. For example, the ALJ noted that "the claimant is a single parent and lives with her two children, ages six and ten. She is their principal caregiver. Ms. Soto testified that she does most of the household chores including the laundry and shopping, but her children help, too." *See* R. at 16. He also noted that "the medical record fails to support the claimant's allegations of physical limitations due to her reported symptoms." *Id.*

18.     As I have discussed above, the record supports the ALJ's credibility determination.

First, the record indicates that the Plaintiff's anxiety disorder condition improves with medication. *See* R. at 163 and 169. Second, the Plaintiff testified that she could attend church, that she goes shopping and does some cleaning, and that she is the sole caretaker of her two children, ages six and ten. *See* R. at 47-48. In the Plaintiff's application for benefits, she stated that she cooks every day, does some house cleaning, and reads such materials as magazines, novels, and religious writings. *See* R. at 97. The Plaintiff also wrote that she goes to movies and on long drives and that she also enjoys meeting new people and learning about new cities. *Id*. The ALJ revealed these discrepancies within his opinion. He also stated that the "evidence in the medical record indicates that the most of the claimant's 'physical' complaints are related to an anxiety disorder." *See* R. at 17. The Plaintiff testified that the her anxiety disorder, "shaky and nervous around other people," prevents her from working. *See* R. at 39. After review of the record, I agree with the ALJ's finding. I cannot reconcile the statements made by the Plaintiff at the hearing and on her application with her complaints regarding her anxiety disorder.

   19. Since it is not the duty of this Court to make an independent judgment as to the credibility of the Plaintiff's testimony regarding her subjective physical symptoms, this Court defers to the ALJ's finding. However, the ALJ must have based his finding on substantial evidence. In coming to his conclusion, the ALJ based his credibility assessment of the claimant on evidence on the record and reasonably determined that the claimant was not credible. Therefore, I agree with the ALJ's findings and hold that Plaintiff's testimony of subjective complaints and functional limitations was not supported by the evidence as a whole to the disabling degree alleged and therefore lacked credibility.

**Plaintiff's Residual Functional Capacity**

20.     The Plaintiff also argues that the ALJ's Residual Functional Capacity (RFC) finding was not supported by evidence or law. Specifically, the Plaintiff finds fault with the ALJ's finding that she could return to her past relevant work. Plaintiff argues that the ALJ did not make the proper analysis of her physical and mental RFC pursuant to *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1993). In reaching his conclusion, the ALJ looked to both controverted and uncontroverted evidence.

21.     At step four, a claimant bears the burden of proving her medical impairments prevent her from performing her past relevant work. *See Williams v. Bowen*, 844 F.2d 748, 751 & n. 2 (10th Cir.1988). However, in order to make the ultimate finding that a claimant is not disabled at step four, the ALJ is required by the agency's rulings to make specific and detailed predicate findings concerning the claimant's residual functional capacity. Step four of the sequential analysis is therefore comprised of three phases. *See Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir.1996). In the first phase, the ALJ must evaluate a claimant's physical and mental residual functional capacity, *see* SSR 86-8, and in the second phase, he must determine the physical and mental demands of the claimant's past relevant work. *See* 20 C.F.R. § 404.1520(e). In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one. *See* SSR 96-8p and 82-62; *see also Winfrey*, 92 F.3d at 1023-25.

22.     Here, the ALJ did make detailed findings required by the regulations and rulings. In arriving at the Plaintiff's RFC, the ALJ stated that "[a]fter considering the record in its entirety, the undersigned finds that the claimant has no exertional limitations imposed by her physical limitations." *See* R. at 17

23.     I find the ALJ's conclusion was properly supported by the correct analysis pursuant to *Winfrey*. First, the ALJ determined that the medical record failed to support the Plaintiff's allegations of physical limitations. *See* R. at 16. Specifically, the ALJ relied on the fact that Ms. Soto's diabetes was under control, that X-rays of her thoracic spine as of April, 1999 were normal; that a cardiac evaluation was determined to be normal in November, 1999; and that she had only a mild obstruction of pulmonary function. *See* R. at 16 and 17. The ALJ concluded that the evidence supports a non-exertional limitation and that the only other impediment keeping Ms. Soto from working was her anxiety disorder. *See* R. at 17. The ALJ further remarked that Ms. Soto's statements concerning her impairments and their impact on her ability to work were not entirely credible. The ALJ specifically discounted a mental impairment assessment from a social worker which suggested that Ms. Soto's current level of psychiatric and physical functioning precludes her employment at this time. *See* R. at 255. The ALJ correctly disregarded this evaluation since the social worker was not a certified psychiatrist.[3]

24.     Second, the ALJ properly examined the extent of the Plaintiff's duties at her past work. The ALJ stated that "[i]n her former job as clerical worker, the claimant worked primarily at a desk job, with no more than 2 hours a day spent walking and standing. The heaviest weight she lifted and carried occasionally throughout the workday was a box of computer paper weighing less than 20 pounds. She performed her work in the reports section, reviewing records, processing police report and performing data entry services using a computer." *See* R. at 17.

---

[3]    *See* 20 C.F.R. §§ 404.1526(b), 416.926(b) ("[a] medical consultant must be a physician. A psychological consultant used in cases where there is evidence of a mental impairment must be a qualified psychologist. (See § 404.1616 for limitations on what medical consultants who are not physicians can evaluate and the qualifications we consider necessary for a psychologist to be a consultant.)").

25. In the final phase, the ALJ correctly determined that Ms. Soto had the ability to meet the job demands found in phase two despite her mental and physical limitations found in phase one. Since the ALJ properly discredited the Plaintiff's complaints and found that her mental impairments and her ability to deal with members of the public, were limited but satisfactory, he concluded that should could perform the type of work she performed in the past.

26. After examining the opinion and the record in its entirety, I find the ALJ's analysis of the Plaintiff's RFC determination was consistent with the regulations and that it was supported by substantial evidence. In this case, the ALJ documented key medical assessments, both controverted and uncontroverted. Therefore, I find that the ALJ's RFC assessment should be upheld.

## RECOMMENDED DISPOSITION

The ALJ did apply the correct legal standards and his decision is supported by substantial evidence. I recommend that the Plaintiff's Motion to Reverse and Remand Administrative Decision, filed July 26, 2001 (*Doc. 9*), should be **DENIED**. Timely objections to the foregoing may be made pursuant to 28 U.S.C. §636(b)(1)(C). Within ten days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to §636(b)(1)(C), file written objections to such proposed findings and recommendations with the Clerk of the United States District Court, 333 Lomas Blvd. NW, Albuquerque, NM 87102. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**